**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

|  |  |  |
|---|---|---|
| | * | |
| THE OCEANAIRE RESTAURANT | | |
| COMPANY, INC., | * | |
| c/o Landry's Inc. | | |
| Attn: Dash Kohlhausen | * | |
| 1510 W. Loop South | | |
| Houston, TX 77027 | * | |
| | | |
| Plaintiff | * | Case No.: _____ |
| | | |
| v. | * | |
| | | |
| HELP II, LLC | * | |
| 1515 Fleet Street | | |
| Baltimore, MD 21231 | * | |
| | | |
| Serve On: | * | |
| George Philippou, Resident Agent | | |
| 650 S. Exeter Street, Suite 200 | * | |
| Baltimore, MD 21202 | | |
| | * | |
| And | | |
| | * | |
| HARBOR EAST | | |
| PARCEL D – HOTEL, LLC | * | |
| c/o H&S Properties Development | | |
| 650 S. Exeter Street, Suite 200 | * | |
| Baltimore, MD 21202 | | |
| | * | |
| Serve On: | | |
| George Philippou, Resident Agent | * | |
| 650 S. Exeter Street, Suite 200 | | |
| Baltimore, MD 21202 | * | |
| | | |
| And | * | |

ATLAS RESTAURANT GROUP, LLC          *
675 S. President Street, Apt. 2504
Baltimore, MD 21202                  *

     Serve On:                      *
     Anastasia Thomas Nardangeli
     Thomas & Libowitz, P.A.         *
     100 Light Street, Suite 1100
     Baltimore, MD 21202            *

     And                            *

PROMENADE VENTURE, LLC               *
675 S. President Street, Apt. 2504
Baltimore, MD 21202                  *

     Serve On:                      *
     Anastasia Thomas Nardangeli
     Thomas & Libowitz, P.A.         *
     100 Light Street, Suite 1100
     Baltimore, MD 21202            *

     And                            *

H&S Properties Development, Corp.    *
650 S. Exeter Street, Suite 200
Baltimore, MD 21202                  *

     Serve On:                      *
     George Philippou, Resident Agent
     650 S. Exeter Street, Suite 200 *
     Baltimore, MD 21202
*    *    *    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT FOR PRELIMINARY AND PERMANENT
## <u>INJUNCTIVE AND OTHER RELIEF</u>

Plaintiff, The Oceanaire Restaurant Company, Inc. ("Plaintiff" or "Oceanaire"), by its undersigned counsel, hereby brings this Complaint for Preliminary and Permanent Injunctive and Other Relief against HELP II, LLC ("HELP"), Harbor East Parcel D – Hotel, LLC ("Parcel D"), Atlas Restaurant Group, LLC ("Atlas"), Promenade Venture, LLC ("Promenade") and H&S Properties Development Corp. ("H&S"), and states as follows:

2

## THE PARTIES

1.     Plaintiff Oceanaire is a Minnesota corporation with its principal place of business located in Houston, Texas.  The Plaintiff operates the Oceanaire Seafood Room located at 801 Aliceanna Street in Baltimore's Harbor East development (formerly known as the Inner Harbor East project).  The Oceanaire Seafood Room is an upscale, full service, sit down seafood restaurant.

2.     Defendant HELP is a limited liability company organized under the laws of the State of Maryland in 2003 for the purpose of owning, acquiring, developing and leasing interests in real property.  Defendant HELP is the landlord of the real property located at 801 Aliceanna Street, Suite 105, Baltimore, MD 21202 in which Plaintiff operates an Oceanaire Seafood Room (the "Oceanaire Premises").  The sole member of Defendant HELP is Harbor East Parcel P – Apartments, LLC whose sole member is Presidential Investors Limited Partnership, LLLP, whose general partner is Defendant H&S.  John Paterakis is the president of Defendant H&S and he and/or his family interests are the controlling owners of Defendant HELP.

3.     Defendant Parcel D is a limited liability company organized under the laws of the State of Maryland in 2003.  Defendant Parcel D is the owner of record of real property located at 200 International Drive, Baltimore, MD 21202 (the "200 International Drive") on which the recently opened Loch Bar seafood restaurant is located.  Upon information and belief, Mr. Paterakis and/or his family interests are the controlling owner of Defendant Parcel D.

4.     Defendant Promenade is a limited liability company organized under the laws of the State of Maryland in 2012.  Defendant Promenade is the lessee of a portion of the 200 International Drive (the "Loch Bar Property").  Alexander F. Smith, the grandson of Mr. Paterakis, is the managing member of Defendant Promenade.

3

5.     Defendant Atlas is a limited liability company organized under the laws of the State of Maryland in 2014.  Defendant Atlas operates various restaurants in Baltimore City, including the Loch Bar seafood restaurant ("Loch Bar").  Mr. Smith is one of the founders/members of Defendant Atlas.

6.     Defendant H&S is a Maryland corporation with its principal place of business in Baltimore, Maryland.  Defendant H&S was founded by Mr. Paterakis in 1995 and soon thereafter began to develop commercial and residential properties in the Harbor East development, including Spinnaker Bay, where the Oceanaire Premises is located, and the building in Harbor East containing the Four Seasons Hotel and retail and restaurant spaces at 200 International Drive, where the Loch Bar Property is located.

7.     Mr. Paterakis and/or his family interests either directly or indirectly control Defendants H&S, Parcel D,  HELP,  Atlas and Promenade.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the matter in controversy is between citizens of different states and exceeds the sum or value of $75,000.

9.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(2).  A substantial part of the events giving rise to the claims asserted in this action occurred in this judicial district.

10.     This Court has personal jurisdiction over all Defendants because, among other things, Defendants conduct business in Maryland and own and/or operate real property in Maryland.

## INTRODUCTION

11.     This case seeks to remedy the egregious violation of a bargained-for restrictive covenant by a prominent landlord conglomerate and its subsidiaries and affiliates.  Defendants, all entities that are owned and/or controlled by Mr. Paterakis or members of his family, have used an intricate web of companies as their very own shell game in an effort to conduct business without regard for the Plaintiff's rights.

12.     Defendants have engaged in a deliberate and concerted effort to circumvent the restrictive covenant restraining Defendant HELP and other Paterakis family interests from leasing space to, or operating, a full service, sit down seafood restaurant that occupies 3,000 square feet or more of leased area (the "Exclusive Use Provision").  Indeed, the Defendants, each a Paterakis family interest, have, among other things, intentionally manipulated the square footage set forth in the lease between Defendant Parcel D and Defendant Promenade, as well as other documents submitted in support of the operation of the Loch Bar seafood restaurant, in a transparent and wrongful attempt to avoid triggering the covenant binding Defendant HELP and any entity owned and controlled by the Paterakis family interests.

13.     Moreover, notwithstanding Plaintiff's efforts to obtain information regarding the nature and extent of the Loch Bar operations for over 14 months, Defendants HELP and Atlas have materially misrepresented the area of the Loch Bar Property and the relationship among the Defendants and wholly ignored Plaintiff's warnings of the impending violation of the Exclusive Use Provision.

14.     If Defendants' ongoing misconduct, violations and intentional interference with Plaintiff's rights under its lease agreement is not enjoined permanently, Plaintiff will be

irreparably harmed in its ability to operate its business with the benefit of the bargained-for restrictive covenant.

FACTUAL ALLEGATIONS

**The Oceanaire Lease Agreement and Exclusive Use Provision**

15.     On or about November 1, 2004, Plaintiff on the one hand and Defendant HELP on the other hand entered into that certain Lease Agreement whereby Plaintiff leased from Defendant HELP the Oceanaire Premises for the operation of a full service, sit down seafood restaurant commonly known as the Oceanaire Seafood Room (the "Oceanaire Lease Agreement").  A true and accurate copy of the Oceanaire Lease Agreement is attached hereto as **Exhibit A**.

16.     The Oceanaire Premises is a part of a large urban redevelopment on approximately 18 acres of land located in Baltimore City described in the Oceanaire Lease Agreement as the "Inner Harbor East project," and now known as "Harbor East," which was and continues to be a development project of Defendant H&S and other Paterakis family interests, including but not limited to Defendant HELP, Defendant Atlas, Defendant Parcel D and Defendant Promenade (collectively, the "Paterakis Family Interests").

17.     The Exclusive Use Provision as set forth in Section 16 of the Oceanaire Lease Agreement establishes Plaintiff's exclusive use right and privilege which limits the ability of Defendant HELP and the Paterakis Family Interests either to lease space within the Inner Harbor East development to another full service, sit down, seafood restaurant or to own or operate a full service, sit down, seafood restaurant within the Inner Harbor East project.  Specifically, Section 16 provides:

6

"Landlord, for itself, and as to other entities owned and controlled by the Paterakis family interests ("Landlord Affiliates") covenants and agrees that so long as this Lease shall remain in effect, neither Landlord nor any Landlord Affiliates will, in the Inner Harbor East project (as defined herein) of Baltimore City, (a) own or operate a full service, sit down, seafood restaurant, or (b) lease space to any tenant for the operation of a full service, sit down, seafood restaurant. However, excluded from the operation and effect of this exclusive covenant are (x) the current lease with the restaurant located at 720 Aliceanna Street operating under the name Roy's and (y) any restaurant (i) which occupies less than 3,000 square feet of leased area, or (ii) where the sale of seafood items comprise less than 50% of gross food sales on an annual basis, or (iii) which is 100% owned and operated (not leased to, or in partnership with, third party operators) by a full service hotel, as an amenity to the hotel."

18.     The Exclusive Use Provision also states that "Tenant may enforce this covenant by injunctive or other equitable relief and, in addition, may seek damages at law or in equity arising from violation of this covenant." *See* Section 16 of Oceanaire Lease Agreement.

19.     The Exclusive Use Provision was intended to provide protection against competition for Plaintiff from full service, sit down, seafood restaurants similar to Plaintiff's business operation; and was a material inducement to the Plaintiff to enter into the Oceanaire Lease Agreement because it ensured that Plaintiff would not face direct competition by similar seafood restaurants developed or operated by HELP or any other of the Paterakis Family Interests in Harbor East.

20.     Plaintiff bargained for the Exclusive Use Provision to prevent direct competition within Harbor East and to protect the substantial economic investment it made pursuant to the Oceanaire Lease Agreement and the significant capital expenditures for constructing and operating the Oceanaire Seafood Room.

21.     As set forth below, Defendants have knowingly and intentionally violated the Exclusive Use Provision.

**Mr. Smith Takes Advantage of Paterakis Family Interests' Holdings in Harbor East**

22.     In 2007 Mr. Smith began to take advantage of his grandfather's substantial real estate holdings by opening several restaurants and eateries in Harbor East.

23.     In 2007, an entity owned and controlled by Mr. Smith opened a Haagen-Dazs franchise in the Promenade building in Harbor East owned and controlled by a Paterakis Family Interest.

24.     Soon thereafter, an entity owned and controlled by Mr. Smith opened the Harbor East Delicatessen and Pizzeria at 1006 Aliceanna Street in a building in Harbor East owned and controlled by a Paterakis Family Interest.

25.     In 2012, an entity owned and controlled by Mr. Smith opened Ouzo Bay, a Greek-themed seafood restaurant managed by Defendant Atlas in a building in Harbor East owned and controlled by a Paterakis Family Interest.

26.     Recently, an entity owned and controlled by Mr. Smith opened Azumi – a Japanese restaurant and sushi bar – across from the Loch Bar Property – in a building Harbor East owned and controlled by Defendant Parcel D.

27.     All of Mr. Smith's restaurants and eateries in Baltimore are located within buildings in Harbor East owned and controlled by Paterakis Family Interests.

**The Loch Bar Opens for Business as a Full Service Sit Down Seafood Restaurant in Violation of the Exclusive Use Provision**

28.     Defendant Parcel D owns and leases the space at 200 International Drive, including the Loch Bar Property.

29.     200 International Drive is located within the Inner Harbor East project as that term is defined in Section 16 and depicted in Exhibit B of the Oceanaire Lease Agreement.

30.     Defendant Parcel D has leased to or otherwise permitted Defendant Promenade to use Loch Bar Property for the purpose of operating a full service, sit down, seafood restaurant that occupies more than 3,000 square feet.

31.     Defendant Atlas operates and oversees the day-to-day management of the Loch Bar seafood restaurant.

32.     On or about April 1, 2016, Defendant Atlas and Defendant Promenade opened the Loch Bar seafood restaurant at 200 International Drive.

33.     The Loch Bar seafood restaurant is advertised as "a classic Maryland seafood house." *See* Screenshot from Loch Bar Website, attached hereto as **Exhibit B**.  Defendant Atlas has used promotional materials to advertise the Loch Bar as "Baltimore's Largest Raw Bar." *See* Promotional Flyer from Defendant Atlas, attached hereto as **Exhibit C**.

34.     The Loch Bar seafood restaurant offers a menu that is predominantly focused on seafood and at least 19 of 25 the menu's selections are seafood specific. *See* Loch Bar Menu, attached hereto as **Exhibit D**.

35.     Moreover, the Loch Bar seafood restaurant menu is substantially similar to Plaintiff's Oceanaire menu as  19 out of 30 selections from the Loch Bar seafood restaurant menu (exclusive of sandwiches, cheese and charcuterie) are either exactly the same or offer slight variations to selections from Plaintiff's menu.  *See* Plaintiff's Menu attached hereto as **Exhibit E.**

36.     Defendants Atlas and Promenade possess and operate the Loch Bar Property as a full service, sit down seafood restaurant in an area offering indoor seating for 85 patrons and outdoor seating for an additional 75 patrons.  Indeed, Mr. Smith has advertised the Loch Bar as having "[a]n outdoor seating area [that] will accommodate 75 patrons."

9

37.     Loch Bar is a full service, sit down, seafood restaurant.

38.     The Loch Bar seafood restaurant occupies an area of 3,000 or more square feet of space, inclusive of indoor space and the outdoor seating area which is for the exclusive use of the Defendants Atlas and Promenade and Loch Bar patrons.

39.     The Use Permit issued by Baltimore City for the operation of the Loch Bar seafood restaurant authorizes the use of ground floor space at the 200 International Drive as a restaurant and bar including "outdoor seating . . . and live entertainment for Lock [*sic*] Bar concepts."  *See* Copy of Use Permit No. 2016-01242, attached hereto as **Exhibit F**.

**The Loch Bar Liquor License Application**

40.     In connection with the operation of the Loch Bar, Mr. Smith, as manager of Defendant Promenade applied for a Class B Beer, Wine and Liquor License in Baltimore City (the "Liquor License Application").

41.     On October 9, 2014, George Philippou, as general counsel for Harbor East Management Group, LLC, another Paterakis Family Interest, wrote a letter addressed to Mr. Smith in his capacity as Manager of Defendant Promenade in support of Defendant Promenade's Liquor License Application (the "Liquor License Letter").  A copy of the Liquor License Letter, together with the Liquor License Application, is attached hereto as **Exhibit G**.  George Philippou is married to Mr. Paterakis' daughter, Karen, and serves as the general counsel to and resident agent for Defendants H&S, HELP and Parcel D.

42.     Shockingly, notwithstanding Oceanaire's proximity to the Loch Bar and the similarities between the two restaurants, and the Defendant Landlord's corporate knowledge of the existence of Oceanaire and the Exclusive Use Provision, Mr. Philippou represented that he is

"confident that there will be little effect upon the current holders of liquor licenses in the area by granting this application."

43.     By supporting Defendant Promenade's Liquor License Application, Mr. Philippou, acting as the agent for Paterakis Family Interests, knowingly interfered with and violated Plaintiff's rights bargained for under the Oceanaire Lease Agreement.

44.     The Liquor License Application states that Loch Bar will provide for outdoor table service and live entertainment.  Also, in the Liquor License Letter, Mr. Philippou makes note of the "water view" that will "enhance the experience" of Loch Bar patrons and that the granting of the application would not have an adverse impact on the Harbor East community.  It is clear that Loch Bar is intended to operate and possess the newly constructed outdoor space, constructed by Defendants adjacent to its indoor space as a significant part of its seafood restaurant operations.

45.     Notably, the Liquor License Application states that a copy of the floor plans designating the area in which the business will be conducted is attached, but no such plans are included with the Liquor License Application.

46.     Mr. Paterakis signed the Statement of Owner, as landlord, in support of the Liquor License Application on behalf of Defendant Parcel D.

**The Loch Bar Lease Agreement**

47.     Over the prior 14 months, Plaintiff has requested that Defendant HELP provide it with a copy of the lease for the Loch Bar Property to confirm the nature and extent of its intended operations.   Defendant HELP, through its general counsel, Mr. Philippou never provided a copy of the lease and counsel for Defendant Atlas denies that any such lease exists.

48.     Contrary to Defendant Atlas' representations to Plaintiff's counsel on April 8, 2016 that neither Atlas nor Promenade had a lease; however, Defendant Promenade submitted a copy of a document it claimed to be the lease between Defendant Parcel D and Defendant Promenade dated November 21, 2014 (the "Loch Bar Lease") with its Liquor License Application which also constitutes as representation to the Baltimore City Liquor Board that the Loch Bar Lease exists.

49.     Pursuant to the Loch Bar Lease, Defendant Parcel D leases to Defendant Promenade two separate spaces: one for the operation of Azumi restaurant and one for the operation of the Loch Bar seafood restaurant, as well as jointly used storage space.

50.     The Loch Bar Lease makes clear that Defendants Atlas, Promenade and Parcel D are aware of the limitations imposed on Loch Bar's operation by the Oceanaire Lease and, as a result, have attempted to manipulate the square footage of the Loch Bar Property to exclude space that directly benefits and contributes to Loch Bar's operation as a full service, sit down seafood restaurant.

51.     The Loch Bar Lease specifically includes "exterior terrace space" in the "rentable area" for the Azumi restaurant, but does not include such space within the measurement for the Loch Bar notwithstanding Loch Bar's open and notorious use of the exterior terrace space adjacent to and accessible only from its interior space.

52.     Pursuant to the Loch Bar Lease, the Premises are defined as "collectively that certain space having a rentable area of (i) approximately [5,583] square feet of interior space and [879] square feet of exterior terrace space ... previously operated as the Pabu restaurant (the "Pabu Premises") and (ii) approximately [2,768] square feet of interior space ... previously operated as the LaMill Café (the "LaMill Premises")." *See* Loch Bar Lease at 2.  The Pabu

Premises and the LaMill Premises shall hereinafter be referred to collectively as the "Joint Premises." The Pabu premises is therefore now the "Azumi Premises," and the LaMill Premises, and a newly constructed outdoor seating area, is now the Loch Bar Property.

53.     Defendant Atlas operates Azumi on the Azumi Premises and operates the Loch Bar seafood restaurant on the Loch Bar Property.

54.     Pursuant to the Loch Bar Lease, Defendant Parcel D also leases approximately 601 square feet of storage space to Defendant Promenade to be used as dry storage for the Joint Premises and operation of Azumi and Loch Bar (the "Storage Space"). Defendant Parcel D does not charge rent to Defendant Promenade for the lease of the storage space.

55.     In previously and repeatedly representing to Plaintiff that Loch Bar occupies less than 3,000 square feet, Defendants HELP and Atlas do not include the Storage Space.

56.     The Storage Space is referred to as a "Keg Room" on drawings submitted with the Liquor License Application and is clearly intended to benefit the operation of Loch Bar as a seafood restaurant and bar. By purposely excluding the area of the Storage Space from Defendant Promenade's rent obligations and its calculation of Loch Bar's square footage, Defendants Promenade and Parcel D tacitly acknowledge the existence of the Exclusive Use Provision and attempt to circumvent it.

57.     Furthermore, under the Loch Bar Lease, Defendant Promenade is required to pay a base rent as well as additional rent, including percentage rent for the lease of the Joint Premises. Percentage rent is based on gross sales which term is defined by the Loch Bar Lease as "gross revenues from all sources on and transactions on, from or through the [Joint] Premises (including any and all catered events and private dining in the interior space or exterior terrace space comprising the [Joint] Premises."

58.     Accordingly, Defendant Promenade is required to pay a portion of its rent to Defendant Parcel D based on sales that are derived from, among other sources, the use of any exterior terrace space.

59.     The former LaMill Premises plus the Storage Space plus the newly constructed outdoor seating area is more than 3,000 square feet.

60.     By entering into a lease for the operation of, and by owning and operating, the Loch Bar seafood restaurant as a full service, sit down, seafood restaurant that occupies 3,000 or more square feet, Defendants have breached and knowingly violated Section 16 of the Oceanaire Lease Agreement.

61.     By the terms of the Oceanaire Lease Agreement, Plaintiff is entitled to immediate and permanent injunctive relief and recovery of the damages incurred as a direct result of Defendants ongoing violations, as well as attorneys' fees.

62.     As early as February 10, 2015—14 months prior to the Loch Bar opening—upon first learning of the potential Loch Bar project, Plaintiff notified Defendant HELP and Defendant H&S of Plaintiff's concerns regarding Defendants' potential breach of the Oceanaire Lease Agreement by leasing the Loch Bar Property to Defendant Atlas for the operation of the Loch Bar seafood restaurant.

63.     At all times during the ensuing 14 month period, Defendant HELP's and Defendant H&S' communications to Plaintiff have repeatedly represented that the Loch Bar seafood restaurant contains less than 3000 square feet and therefore falls within the "safe harbor" provision of Section 16 of the Oceanaire Lease Agreement.

64.     In a letter dated February 1, 2016 (the "February 1 Letter")—over 2 months prior to Loch Bar's opening—counsel for the Plaintiff notified Defendant HELP that Plaintiff was

14

relying on Defendant HELP's prior written representations to Plaintiff that Loch Bar did not violate the Exclusive Use Provision of the Oceanaire Lease Agreement, but that Plaintiff reserved all rights regarding any subsequently discovered violations of the Oceanaire Lease Agreement.

65.     Because the Loch Bar seafood restaurant had not yet opened, Plaintiff was forced to rely on Defendant HELP's and Defendant H&S' verbal and written representations as to the applicability of the Exclusive Use Provision to the Loch Bar Property.

66.     Immediately after Loch Bar opened for business and it became apparent that its seafood restaurant operations occupied more than 3,000 square feet of leased space, counsel for Plaintiff sent a cease and desist letter to Defendants HELP and Atlas demanding that they discontinue operating Loch Bar in violation of the Exclusive Use Provision.

67.     Defendant Atlas responded with the April 8 Letter wherein it denied, among other things, that Loch Bar violated the Exclusive Use Provision because "there is no arrangement (by Lease or otherwise) pertaining to any space other than the 2,856 square feet ... and there has been no use of any outdoor seating to date."

<u>**COUNT I**</u>
**(Breach of Contract against Defendant HELP)**

68.     All foregoing paragraphs are adopted and incorporated by reference as if fully repeated herein.

69.     At all relevant times, Plaintiff and Defendant HELP were parties to the Oceanaire Lease Agreement whereby Defendant HELP leased restaurant space to Plaintiff for the operation of the Oceanaire Seafood Room.

70.     At all relevant times, Defendant HELP was bound by the terms of Section 16 of the Oceanaire Lease Agreement whereby it covenanted, among other things, not to lease space in

the Inner Harbor East project to a full service, sit down seafood restaurant that occupies 3,000 or more square feet.

71.    Defendant HELP materially breached Section 16 of the Oceanaire Lease Agreement by agreeing to allow Defendant Parcel D to lease, and Defendant Promenade and Defendant Atlas to lease and occupy, the Loch Bar Property for the operation of the Loch Bar Seafood Restaurant, which opened for business on or about April 1, 2016.

72.    The Loch Bar is a full-service, sit down, seafood restaurant.

73.    The Loch Bar seafood restaurant occupies and derives financial benefit from 3,000 or more square feet of area containing seating for 160 patrons.

74.    Plaintiff has demanded that Defendant HELP cease and desist its continuing violation of Section 16 of the Oceanaire Lease Agreement, but Defendant HELP has ignored Plaintiff's demand.

75.    Unless Defendant HELP is temporarily, preliminarily and permanently enjoined from permitting the Loch Bar seafood restaurant to operate in violation of the Exclusive Use Provisions, Plaintiff will suffer substantial, immediate, and irreparable harm for which it has no adequate remedy at law.

76.    The operation of the Loch Bar seafood restaurant poses a significant and substantial threat to Plaintiff's business because the Loch Bar seafood restaurant directly competes with and is a substantially similar restaurant to Plaintiff's Oceanaire Seafood Room within the Inner Harbor East Project.

WHEREFORE, Plaintiff Oceanaire Restaurant Company, Inc. requests judgment in its favor on its breach of contract claim and requests that the Court:

(a) issue a preliminary and permanent injunction restraining Defendant HELP II, LLC from permitting Defendant Atlas Restaurant Group, LLC  and Defendant Promenade to continue the operation of a seafood restaurant in violation of the Exclusive Use Provision of Section 16 of the Oceanaire Lease Agreement; and

(b) award attorneys' fees to Plaintiff as provided under Section 25.3 of the Oceanaire Lease Agreement; and

(c) award such other and further relief as this Court deems just and proper under the circumstances, including an award of damages.

## COUNT II
### (Violation of Restrictive Covenant against Defendant Parcel D)

77.     All foregoing paragraphs are adopted and incorporated by reference as if fully repeated herein.

78.     Upon information and belief, at all relevant times, Defendant Parcel D, as a Paterakis Family Interest, had knowledge of the Exclusive Use Provision.

79.     As a Paterakis Family Interest, Defendant Parcel D, is bound by the Exclusive Use Provision.

80.     Mr. Paterakis signed the Oceanaire Lease as president of H&S Properties Development Corp, which is the general partner of Presidential Investors Limited Partnership, LLLP, which is the sole member of Harbor East Parcel P – Apartments, LLC, which is the sole member of Defendant HELP.

81.     Mr. Paterakis signed documents, including the Liquor License Application, on behalf of Defendant Parcel D, in support of the operation of the Loch Bar, which documents make clear that Loch Bar would operate in violation of the Exclusive Use Provision. Accordingly, Defendant Parcel D had actual or constructive knowledge of the restrictive

17

covenant set forth in the Exclusive Use Provision set forth in Section 16 of the Oceanaire Lease Agreement.

82.     By entering into a lease or other arrangement for the operation of the Loch Bar seafood restaurant and permitting the operation of a full service, sit down, seafood restaurant at the 200 International Drive which premises lie within the Inner Harbor East project, Defendant Parcel D knowingly violated the restrictive covenant set forth in the Exclusive Use Provision set forth in Section 16 of the Oceanaire Lease Agreement.

83.     Unless Defendant Parcel D is temporarily, preliminarily and permanently enjoined from permitting the operation of the Loch Bar seafood restaurant in violation the Exclusive Use Provision of Section 16 of the Oceanaire Lease Agreement, Plaintiff will suffer substantial, immediate, and irreparable harm for which it has no adequate remedy at law.

84.     The operation of the Loch Bar seafood restaurant poses a significant and substantial threat to Plaintiff's business because the Loch Bar seafood restaurant directly competes with and is a substantially similar restaurant to Plaintiff's Oceanaire Seafood Room within the Inner Harbor East Project.

WHEREFORE, Plaintiff Oceanaire Restaurant Company, Inc. requests judgment in its favor on its breach of restrictive covenant claim and requests that the Court:

(a) issue a preliminary and permanent injunction restraining Defendant Harbor East Parcel D – Hotel, LLC from permitting the operation of the Loch Bar seafood restaurant on property it leases in violation of the Exclusive Use Provision of Section 16 of the Oceanaire Lease Agreement; and

(b) award attorneys' fees to Plaintiff; and

18

(c) award such other and further relief as this Court deems just and proper under the circumstances, including an award of damages.

## COUNT III
### (Violation of Restrictive Covenant against Defendant Atlas)

85.     All foregoing paragraphs are adopted and incorporated by reference as if fully repeated herein.

86.     Upon information and belief, at all relevant times, Defendant Atlas had actual knowledge of the Exclusive Use Provision.

87.     Upon information and belief, the ownership of Defendant Atlas is related to the ownership of Defendant HELP.

88.     Upon information and belief, Mr. Smith, one of the owners of Defendant Atlas is the grandson of one of the owners of Defendant HELP and both Defendant Atlas and Defendant HELP are Paterakis Family Interests.

89.     As a result of the familial relationship and pattern of business practices between Defendant HELP and Defendant Atlas, Defendant Atlas had actual or constructive knowledge of the Exclusive Use Provision set forth in Section 16 of the Oceanaire Lease Agreement.

90.     As a Paterakis Family Interest, Defendant Atlas is bound by the Exclusive Provision.

91.     By entering into a lease for the operation of the Loch Bar and operating a full service, sit down, seafood restaurant within the Inner Harbor East project, Defendant Atlas knowingly violated the restrictive covenant set forth in the Exclusive Use Provision set forth in Section 16 of the Oceanaire Lease Agreement.

92.     Unless Defendant Atlas is temporarily, preliminarily and permanently enjoined from operating the Loch Bar in violation the Exclusive Use Provision, Plaintiff will suffer substantial, immediate, and irreparable harm for which it has no adequate remedy at law.

93.     The operation of the Loch Bar poses a significant and substantial threat to Plaintiff's business because Loch Bar directly competes with and is a substantially similar restaurant to Plaintiff's Oceanaire Seafood Room within the Inner Harbor East Project.

WHEREFORE, Plaintiff Oceanaire Restaurant Company, Inc. requests judgment in its favor on its breach of contract claim and requests that the Court:

(a) issue a preliminary and permanent injunction restraining Defendant Atlas Restaurant Group, LLC from operating the Loch Bar seafood restaurant in violation of the Exclusive Use Provision of Section 16 of the Oceanaire Lease Agreement; and

(b) award attorneys' fees to Plaintiff; and

(c) award such other and further relief as this Court deems just and proper under the circumstances, including an award of damages.

## COUNT IV
### (Violation of Restrictive Covenant against Defendant Promenade)

94.     All foregoing paragraphs are adopted and incorporated by reference as if fully repeated herein.

95.     Upon information and belief, at all relevant times, Defendant Promenade had actual knowledge of the Exclusive Use Provision.

96.      Upon information and belief, the ownership of Defendant Promenade is related to the ownership of Defendant HELP such that knowledge may be imputed from Defendant HELP to Defendant Promenade.

97.     Upon information and belief, both Defendant HELP and Defendant Promenade are members of the Paterakis Family Interests.

98.     As a result of the familial relationship between Defendant HELP and Defendant Promenade, Defendant Promenade had actual or constructive knowledge of the restrictive covenant set forth in the Exclusive Use Provision set forth in Section 16 of the Oceanaire Lease Agreement.

99.     By entering into a lease for the operation of the Loch Bar seafood restaurant and permitting the operation of a full service, sit down, seafood restaurant at the 200 International Drive within the Inner Harbor East project, Defendant Promenade knowingly violated the restrictive covenant set forth in the Exclusive Use Provision set forth in Section 16 of the Oceanaire Lease Agreement.

100.    Unless Defendant Promenade is temporarily, preliminarily and permanently enjoined from permitting the operation of the Loch Bar seafood restaurant in violation the Exclusive Use Provision, Plaintiff will suffer substantial, immediate, and irreparable harm for which it has no adequate remedy at law.

101.    The operation of the Loch Bar seafood restaurant poses a significant and substantial threat to Plaintiff's business because the Loch Bar seafood restaurant directly competes with and is a substantially similar restaurant to Plaintiff's Oceanaire Seafood Room within the Inner Harbor East Project.

WHEREFORE, Plaintiff Oceanaire Restaurant Company, Inc. requests judgment in its favor on its breach of contract claim and requests that the Court:

(a) issue a preliminary and permanent injunction restraining Defendant Promenade Venture, LLC from permitting the operation of the Loch Bar on property it leases in

violation of the Exclusive Use Provision of Section 16 of the Oceanaire Lease Agreement; and

(b) award attorneys' fees to Plaintiff ; and

(c) award such other and further relief as this Court deems just and proper under the circumstances, including an award of damages.

<u>**COUNT V**</u>
**(Violation of Restrictive Covenant against Defendant H&S)**

102.    All foregoing paragraphs are adopted and incorporated by reference as if fully repeated herein.

103.    Upon information and belief, at all relevant times, Defendant H&S had actual knowledge of the Exclusive Use Provision.

104.    Mr. Paterakis is the president of Defendant H&S which actually signed the Oceanaire Lease on behalf of Defendant HELP.

105.    Mr. Paterakis signed documents, including the Liquor License Application, on behalf of Defendant Parcel D, in support of the operation of the Loch Bar, which documents make clear that Loch Bar would operate in violation of the Exclusive Use Provision.

106.    Both Defendant HELP and Defendant H&S are members of the Paterakis Family Interests.

107.    Defendant H&S had actual or constructive knowledge of the restrictive covenant set forth in the Exclusive Use Provision.

108.    Mr. Paterakis, through H&S, owns an interest in and controls both Defendant HELP and Defendant Parcel D and by permitting the operation of a full service, sit down, seafood restaurant at the 200 International Drive within the Inner Harbor East project, Defendant H&S knowingly violated the restrictive covenant set forth in the Exclusive Use Provision set

forth in Section 16 of the Oceanaire Lease Agreement.   Unless Defendant H&S is temporarily, preliminarily and permanently enjoined from permitting the operation of the Loch Bar in violation the Exclusive Use Provision of Section 16, Plaintiff will suffer substantial, immediate, and irreparable harm for which it has no adequate remedy at law.

109.    The operation of the Loch Bar seafood restaurant poses a significant and substantial threat to Plaintiff's business because the Loch Bar seafood restaurant directly competes with and is a substantially similar restaurant to Plaintiff's Oceanaire Seafood Room within the Inner Harbor East Project.

WHEREFORE, Plaintiff Oceanaire Restaurant Company, Inc. requests judgment in its favor on its breach of contract claim and requests that the Court:

(a)   issue a preliminary and permanent injunction restraining Defendant H&S Properties Development Corp. from permitting the operation of the Loch Bar on property it leases in violation of the Exclusive Use Provision of Section 16 of the Oceanaire Lease Agreement; and

(b)   award attorneys' fees to Plaintiff; and

(c)   award such other and further relief as this Court deems just and proper under the circumstances, including an award of damages.

## COUNT VI
**(Declaratory Judgment Against All Defendants)**

110.    All foregoing paragraphs are adopted and incorporated by reference as if fully repeated herein.

111.    Plaintiff has a direct, substantial and present justiciable interest concerning its rights and certain restrictions under the Oceanaire Lease Agreement.

23

112.    There exists an actual controversy between the Plaintiffs and Defendants and a declaration of the rights and responsibilities of the Parties would terminate the uncertainty or controversy giving rise to this proceeding.

113.    There is imminent and inevitable litigation regarding the subject matter of the instant complaint.

114.    All persons or entities that have an actual, present and adverse interest in the subject matter of this action are parties to this action or are identified in this complaint.

115.    Plaintiffs are entitled to a final declaratory judgment that:

   a.   Defendant HELP is an entity owned and controlled by the Paterakis family interests as that term is used in the Oceanaire Lease Agreement.

   b.   Defendant Parcel D is an entity owned and controlled by the Paterakis family interests as that term is used in the Oceanaire Lease Agreement.

   c.   Defendant H&S is an entity owned and controlled by the Paterakis family interests as that term is used in the Oceanaire Lease Agreement.

   d.   Defendant Atlas is an entity owned and controlled by the Paterakis family interests as that term is used in the Oceanaire Lease Agreement.

   e.   Defendant Promenade is an entity owned and controlled by the Paterakis family interests as that term is used in the Oceanaire Lease Agreement.

   f.   Each of the Defendants, as an entity owned and controlled by the Paterakis family interests, as that term is used in the Oceanaire Lease Agreement, is subject to the Exclusive Use Provision.

g.  The operation of the Loch Bar seafood restaurant and its possession and use of space including interior and exterior space and storage space constitutes occupancy of more than 3,000 square feet.

h.  The Loch Bar seafood restaurant is a full service, sit down seafood restaurant.

i.  Each of the Defendants, as an entity owned and controlled by the Paterakis family interests, as that term is used in the Oceanaire Lease Agreement, is enjoined from engaging in conduct or entering into agreements related the operation of the Loch Bar that violate the Exclusive Use Provision.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and declaring:

A.  Defendant HELP is an entity owned and controlled by Paterakis Family Interests as that term is used in the Oceanaire Lease Agreement.

B.  Defendant Parcel D is an entity owned and controlled by Paterakis Family Interests as that term is used in the Oceanaire Lease Agreement.

C.  Defendant H&S is an entity owned and controlled by Paterakis Family Interests as that term is used in the Oceanaire Lease Agreement.

D.  Defendant Atlas is an entity owned and controlled by Paterakis Family Interests as that term is used in the Oceanaire Lease Agreement.

E.  Defendant Promenade is an entity owned and controlled by Paterakis Family Interests as that term is used in the Oceanaire Lease Agreement.

F.  Each of the Defendants, as an entity owned and controlled by Paterakis Family Interests , as that term is used in the Oceanaire Lease Agreement, is subject to the Exclusive Use Provision.

G. The operation of the Loch Bar seafood restaurant and its possession and use of space including interior and exterior space and storage space constitutes occupancy of more than 3,000 square feet.

H. The Loch Bar Seafood Restaurant is a full service sit down seafood restaurant.

I. Each of the Defendants, as an entity owned and controlled by Paterakis family interests, as that term is used in the Oceanaire Lease Agreement, is enjoined from engaging in conduct or entering into agreements related the operation of the Loch Bar seafood restaurant that violate the Exclusive Use Provision.

April 20, 2016                                          Respectfully submitted,


    /s/ Albert J. Mezzanotte, Jr.
William F. Ryan, Jr. (Bar No. 00360)
Albert J. Mezzanotte, Jr. (Bar No. 00197)
Cara C. Murray (Bar No. 28843)
Whiteford, Taylor & Preston, L.L.P.
7 Saint Paul Street, Suite 1300
Baltimore, Maryland  21202-1626
(410) 347-8700
(410) 234-2362
wryan@wtplaw.com
amezzanotte@wtplaw.com
cmurray@wtplaw.com

*Counsel for Plaintiff,*
*The Oceanaire Restaurant Company, Inc.*

20920

26