IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| THE OCEANAIRE RESTAURANT COMPANY, INC. | * | |
| | * | |
| Plaintiff | | |
| | * | |
| v. | | CIVIL ACTION NO. 1:16-cv-01180-RDB |
| | * | |
| HELP II, LLC, et al. | | |
| | * | |
| Defendants | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS ATLAS RESTAURANT GROUP, LLC'S AND
PROMENADE VENTURE, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT
FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

**I.    INTRODUCTION**

This case concerns an exclusive use provision contained in a commercial lease agreement entered into by Plaintiff The Oceanaire Restaurant Company, Inc. ("Oceanaire" or "Plaintiff") and Co-Defendant HELP II, LLC ("HELP") in November of 2004 ("Oceanaire Lease"). Compl. ¶¶ 15 – 17 and Compl. Ex. A.  Neither moving Defendants Atlas Restaurant Group, LLC ("Atlas") nor Promenade Venture, LLC ("Promenade") (hereinafter, together "Defendants") are parties to the Oceanaire Lease. Compl. Ex. A.

Pursuant to the Oceanaire Lease, Plaintiff operates a seafood restaurant in commercial space located in Baltimore City, Maryland's Harbor East neighborhood ("Harbor East"), Compl. ¶¶ 15 – 17, which is a commercial and residential development developed by Co-Defendant H&S Properties Development, Corp. ("H&S"), whose founder and president is businessman John Paterakis, according to Plaintiff. Compl. ¶¶ 2 and 6.

Section 16 of the Oceanaire Lease includes an exclusive use provision which states,

> Landlord, for itself, and as to other entities owned and controlled by the Paterakis family interests ("Landlord Affiliates") covenants and agrees that so long as this Lease shall remain in effect, neither Landlord nor any Landlord Affiliates will, in the Inner Harbor East project (as defined herein) of Baltimore City, (a) own or operate a full service, sit down, seafood restaurant, or (b) lease space to any tenant for the operation of a full service, sit down, seafood restaurant. However, excluded from the operation and effect of this exclusive covenant are (x) the current lease with the restaurant located at 720 Aliceanna Street operating under the name Roy's and (y) any restaurant (i) which occupies less than 3,000 square feet of leased area, or (ii) where the sale of seafood items comprise less than 50% of gross food sales on an annual basis, or (iii) which is 100% owned and operated (not leased to, or in partnership with, third party operators) by a full service hotel, as an amenity to the hotel.

(hereinafter, "Exclusive Use Provision") Compl. ¶ 17.

In an attempt to limit competition from another seafood restaurant owned, operated, or leased by Harbor East's developer, the Exclusive Use Provision prohibits "Landlord, for itself, and as to other entities owned and controlled by the Paterakis family interests" from owning, operating or leasing a "full service, sit down, seafood restaurant" in Harbor East. Compl. ¶ 17.

Critically in the context of Defendants' Motion to Dismiss, the Exclusive Use Provision in the Oceanaire Lease includes a "Safe Harbor" clause that allows for the operation of *"any restaurant"* … "where the sale of seafood items comprise less than 50% of gross food sales *on an annual basis*" ("Less Than 50% Seafood Safe Harbor"). (Emphasis added). Compl. ¶ 17.

Moving Defendant Promenade is a Maryland limited liability company formed in April of 2012. Compl. ¶ 4. Promenade entered into a commercial lease agreement with Co-Defendant Harbor East Parcel D-Hotel, LLC ("Parcel D") for commercial space located in Harbor East (hereinafter, the "Lease"). Compl. ¶ 51. The Lease concerns two non-contiguous parcels of improved commercial real-estate located in Harbor East formerly occupied by businesses operating under the names Pabu and LaMill. Compl. ¶ 52. One of the businesses currently operated

by Promenade under the Lease is in the space previously occupied by Pabu, and the other business currently operated by Promenade under the Lease is the space previously occupied by LaMill.

Moving Defendant Atlas is a Maryland limited liability company formed in March of 2014. Compl. ¶ 5. Plaintiff alleges that beginning April 1, 2016, Atlas began operating an oyster bar[1] under the name "Loch Bar" in the space formally occupied by LaMill pursuant to the Lease.[2] Compl. ¶ 52.

Alex F. Smith ("Mr. Smith"), who is not a party to this case, is "one of the founders/members" of Atlas and the managing member of Promenade as well as the grandson of John Paterakis, Compl. ¶¶ 4 and 5.

Claiming Atlas and Promenade are "Paterakis Family Interest[s]," Plaintiff sued Defendants for "Violation of Restrictive Covenant," Counts III and IV of the Complaint, on the grounds that the operation of the Loch Bar constitutes the operation of a "full service, sit down, seafood restaurant" in violation of the Exclusive Use Provision in the Oceanaire Lease. Compl. ¶¶ 90, 91, and 97. Further, on those same grounds, Plaintiff sued Defendants for various forms of declaratory relief. *See* Compl. Count VI. Plaintiff's claims are meritless.

In short and assuming for argument's sake only (but not in any manner admitting), that Defendants are even bound by the Exclusive Use Provision, it is too early in Loch Bar's brief existence to determine whether its operation will qualify for the Less Than 50% Seafood Safe Harbor, which is calculated *on an annual basis*. Compl. ¶ 17.

At the time Plaintiff filed the Complaint on April 20, 2016, which is a mere 19 days after Loch Bar opened for business on April 1, 2016, Compl. ¶ 32, it is impossible to determine if the

---

[1] Plaintiff further alleges that in addition to oysters, at the time the Complaint was filed on April 20, 2016 (ECF 1), the majority of Loch Bar's menu consisted of seafood items. Compl. ¶ 34.
[2] Another restaurant named "Azumi" operates in the other non-contiguous space. Compl. ¶ 52.

3

Defendants are currently (or will be in the future) in breach of the Exclusive Use Provision contained in the Oceanaire Lease. It is currently unknown and cannot now be determined if Loch Bar's "sale of seafood items comprise less than 50% of gross food sales *on an annual basis*."

Plaintiff's declaratory relief claim also fails because federal law precludes the entry of "advisory" opinions where no controversy exists. Moreover, given the extremely short duration of Loch Bar's operation at the time the Complaint was filed, a mere 19 days, and the paltry and limited allegations concerning damages suffered by Plaintiff (for all intents and purposes, none are alleged), it is impossible to determine if the "matter in controversy … exceeds the sum or value of $75,000;" thus, precluding this Court from exercising subject matter jurisdiction under 28 U.S.C. § 1332.

## II.     APPLICABLE STANDARD

This Court explained the "well settled" standard applied to Rule 12(b)(6) motions:

> A Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See Edwards v. City of Galsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

*Marketing Products Management, LLC v. healthandbeautydirect.com, Inc.*, 333 F.Supp.2d 418, 419-20 (D. Md. 2004). This Court further explained:

> It is also important to be mindful, however, that the defendants are entitled to have the *legal sufficiency* of the complaint fully examined and that, although the truth of all facts is assumed, consistent with the complaint's allegations, *see Hishon v. King & Spalding*, 467 U.S. 69, 73 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the court need not accept the legal conclusions drawn from the facts, *see Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991), or unwarranted inferences, unreasonable conclusions, or arguments. *See generally* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990 & 2004.)

*healthandbeautydirect.com*, 333 F.Supp.2d at 420 (emphasis in original).

### III. ARGUMENT

#### A. Plaintiff Failed to State a Claim that Defendants Atlas and Promenade Breached the Oceanaire Lease.

Plaintiff failed to state a claim that Defendants Atlas and Promenade breached the Oceanaire Lease, because neither Defendant is a party to that lease. The only parties to the Oceanaire Lease are Plaintiff and HELP. Compl. Ex. A. Defendants Atlas and Promenade are not and cannot be parties to the Oceanaire Lease, because neither Atlas nor Promenade had been formed at the time the Oceanaire Lease was signed in 2004.[3] *See* Compl. ¶¶ 4 and 5. It is axiomatic that one cannot breach a contract to which he/she/it is not a party. *Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 674 A.2d 521 (1996). Mutual assent is an integral component of every contract. *See Maslow v. Vanguri*, 168 Md. App. 298, 321, 896 A.2d 408, 422 (2006); *Lacy v. Arvin*, 140 Md.App. 412, 426, 780 A.2d 1180 (2001); *Kiley v. First Nat'l Bank of Maryland*, 102 Md.App. 317, 333-34, 649 A.2d 1145 (1994).

Cognizant of this glaring deficiency in its "Breach of Restrictive Covenant" claims against Defendants Atlas and Promenade, respectively Counts III and IV of the Complaint, Plaintiff baldly alleges and postulates "*upon information and belief*" that Atlas and Promenade "had actual knowledge of the Exclusive Use Provision" … "[are] related to the ownership of Defendant HELP," and qualify as "Paterakis Family Interests." Compl. ¶¶ 86, 87, 88, 95, 96, and 97 (emphasis added).

Preliminarily, allegations premised upon "information and belief" are insufficient to defeat a motion to dismiss filed under Fed.R.Civ.P. 12(b)(6). Under the pleading standard the Supreme Court articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) and *Ashcroft v. Iqbal*,

---

[3] Plaintiff and Defendants do not even have a common landlord. Defendants' landlord is Parcel D, which is also not a party to the Oceanaire Lease. Compl. Ex. A.

556 U.S. 662, 678 (2009), a complaint's conclusory allegations based solely "upon information and belief" are "insufficient to defeat a motion to dismiss." *See also Harman v. Unisys Corp.*, 356 F.App'x 638, 640–41 (4th Cir.2009); *In re Darvocet, Darvon, and Propoxyphene Products Liability Litigation*, 756 F.3d 917, 931 (6th Cir.2014); *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir.2013); *Malibu Media, LLC v. Doe*, No. PWG–13–365, 2014 WL 7188822, at *4 (D.Md. Dec. 16, 2014). Setting aside Plaintiff's insufficient allegations and postulations concerning Defendants' knowledge of the Exclusive Use Provision contained in the Oceanaire Lease, its purported relationship with HELP and, more importantly, its status as a "Paterakis Family Interest," Plaintiff's breach of covenant claims against Defendants must still fail.

Even assuming for argument's sake the truth of the allegation that either Atlas or Promenade are somehow bound by the Exclusive Use Provision contained in the Oceanaire Lease,[4] neither Atlas nor Promenade *could* be in breach of its terms at this early stage of Loch Bar's operation.

Plaintiff alleges Defendants Atlas and Promenade opened Loch Bar on April 1, 2016. Compl. ¶ 32. Under the explicit terms of the Exclusive Use Provision, particularly the Less Than 50% Seafood Safe Harbor, it is impossible to currently determine *(just 19 days after Loch Bar opened)*, which is when the Complaint was filed, whether Loch Bar's sales of seafood items will comprise "less than 50% of gross food sales *on an annual basis*."[5] The earliest such a

---

[4] Nonetheless, Defendants contest this assumption.
[5] In order to avoid *another* Safe Harbor provision incorporated into the Exclusive Use Provision, which permits the operation of "any restaurant" that "occupies less than 3,000 square feet of leased area" ("Square Footage Safe Harbor"), Plaintiff makes various allegations concerning the size of Loch Bar's leased square footage, its sharing of certain storage space with Azumi and the use of certain outdoor patio space, among many others. Compl. ¶¶ 40 – 60. The purpose for such recitals by the Plaintiff is to support the allegation that Loch Bar "occupies 3,000 or more square feet," Compl. ¶ 60, making it ineligible for the Square Footage Safe Harbor. In doing so, Plaintiff ignores the obvious. Without conceding that Loch Bar occupies greater than 2,999 square feet of leased

determination can be made in this regard is April 1, 2017. Defendants may be eligible for one of the Exclusive Use Provision's Safe Harbor's. For the foregoing reasons, Plaintiff has failed to state a claim for "Breach of Restrictive Covenant" against Defendants Atlas and Promenade, respectively Counts III and IV of the Complaint. The Court should dismiss these claims without prejudice.

**B.     Plaintiff's Declaratory Judgment Count Fails as a Matter of Law.**

The Plaintiff seeks a judgment from this Court declaring, in part, the following:

> D.  Defendant Atlas is an entity owned and controlled by Paterakis Family Interests as that term is used in the Oceanaire Lease Agreement. [6]
>
> E.  Defendant Promenade is an entity owned and controlled by Paterakis Family Interests as that term is used in the Oceanaire Lease Agreement.
>
> F.  Each of the Defendants, as an entity owned and controlled by Paterakis Family Interests, as that term is used in the Oceanaire Lease Agreement, is Subject to the Exclusive Use Provision.
>
> G.  The Operation of the Loch Bar seafood restaurant and its possession and use of space including interior and exterior space and storage space constitutes occupancy of more than 3,000 square feet.
>
> H.  The Loch Bar seafood restaurant is a full service, sit down seafood restaurant.
>
> I.  Each of the Defendants, as an entity owned and controlled by Paterakis Family Interests, as that term is used in the Oceanaire Lease Agreement, is enjoined from engaging in conduct or entering into agreements related to the operation of the Loch Bar Seafood restaurant that violate the Exclusive Use Provision.

---

space or that they are even bound by the Exclusive Use Provision in the first place, Defendants assert that the Court need not trouble itself with the size of Loch Bar or any of Plaintiff's other supporting allegations concerning its footprint when considering this Motion to Dismiss. Defendants maintain that Plaintiff cannot allege they are not within the Exclusive Use Provision's other Safe Harbor clause (*i.e.*, the Less Than 50% Seafood Safe Harbor) allowing the operation of "any restaurant" where seafood items comprise less than 50% of gross food sales *on an annual basis*. In short (and again), this analysis cannot be yet be determined.

[6] Subparagraphs A – C do not concern Defendants Atlas and Promenade.

Compl. ¶ 115.

The federal Declaratory Judgment Act, 28 U.S.C. § 2201, governs Plaintiff's claim for declaratory relief. The Declaratory Judgment Act states in pertinent part,

> (a) In a case of actual controversy within its jurisdiction, … as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Declaratory Judgment Act grants district courts the discretionary power to entertain declaratory judgment actions. *First Nationwide Mortgage Corp. v. FISI Madison, Inc.,* 219 F.Supp.2d 669, 672 (D.Md.2002). "Federal courts sitting in diversity apply state substantive law and federal procedural law." *Id.* (citing *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). "The Declaratory Judgment Act is a procedural statute and creates no substantive rights." *See e.g. id.; Bourazak v. North River Ins. Co.,* 379 F.2d 530, 533 (7th Cir.1967) ("The Declaratory Judgment Act created no new rights, but rather created a new remedy with which to adjudicate existing rights." (citing *Walker Process Equip., Inc. v. FMC Corp.,* 356 F.2d 449, 451 (7th Cir.1966))).

In a declaratory judgment action, a court must determine whether it has jurisdiction over the action and whether an actual controversy has been presented within the meaning of the Declaratory Judgment Act. *Volvo Const. Equip. N. America, Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir.2004); *See Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272, 61 S.Ct. 510, 85 L.Ed. 826 (1941). Such a question is one of degree, and a court must determine whether "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment." *Id*. at 273, 61 S.Ct. 510. In other words, the Declaratory Judgment Act may not be invoked to ask a district court to issue advisory opinions, and the dispute between the parties must be a case or controversy within the confines of Article III of the Constitution. *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 167 (4th Cir.1990); *see also MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

In this instance, where the Plaintiff cannot plausibly state a claim that Defendants have breached the Exclusive Use Provision because any such allegation is premature, *see* Section A. above, a ruling by this Court concerning any matter set forth in paragraph 115 of the Complaint would merely be an advisory opinion and have no legal effect to adjudicate a current dispute or "substantial controversy" existing between Plaintiff and Defendants. For this reason, Plaintiff's claim for Declaratory Relief against Defendants, Count VI, should be dismissed without prejudice.

### C. This Court Lacks Subject Matter Jurisdiction.

Finally, Plaintiff's inability to determine at this early stage of Loch Bar's operation how much seafood it will sell on an *annual basis* is not only a problem for the Breach of Covenant and Declaratory Relief claims, it presents a subject matter jurisdiction issue for this Court. While the Plaintiff baldly alleges that "the matter in controversy … exceeds the sum or value of $75,000," nothing contained in the Complaint supports that allegation. In fact, the only allegation that even mentions damages in the entirety of the Complaint is contained in paragraph 61, which states, "[b]y the terms of the Oceanaire Lease Agreement, Plaintiff is entitled to immediate and permanent injunctive relief and recovery of the damages incurred as a direct result of Defendants' *ongoing violations*, as well as attorneys' fees." Compl. ¶ 61 (Emphasis added). The plain reading of the

9

Complaint indicates that Plaintiff seeks damages on a cumulative basis *from the date of the filing of the Complaint*. That is, simply, not enough.

A pleading that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction, however, dismissal is appropriate where it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938). If a defendant challenges a plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 188–89, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A leading treatise explains that the proponent of federal jurisdiction must show "that it does not appear to a legal certainty that the claim for relief is for less than the statutorily prescribed jurisdictional amount." 14B Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, *Federal Practice and Procedure* § 3702 (3d ed.1998). Stated differently, a district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000. Plaintiff has failed to meet this burden.

Plaintiff alleges Defendants Atlas and Promenade opened Loch Bar on April 1, 2016. Compl. ¶ 32. The Complaint in the instant case was filed on April 20, 2016 (ECF 1). The only damages Plaintiff seeks, however, are "damages incurred as a direct result of Defendants' *ongoing violations*, plus attorneys' fees[,]" meaning the only damages Plaintiff claims are those damages accruing from April 20, 2016. However, Plaintiff has made no allegations concerning what damages it has suffered as a result of the facts as alleged in the Complaint.

There are no allegations by the Plaintiff (and, at this juncture, impossible to even speculate) that it has or will lose profits, business opportunities, customers or any other cognizable past or

future damages. For this reason, this Court should decline to exercise subject matter jurisdiction over this case as it is impossible for Plaintiff to meet its burden that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

## IV. CONCLUSION

For the forgoing reasons, Plaintiff's Complaint should be dismissed without prejudice.

Respectfully submitted,

   /s/ *Andrew K. O'Connell*
Francis R. Laws, Esquire, #02596
Andrew K. O'Connell, #28168
Sima G. Fried, #03564
Anastasia E. Thomas, #28340
THOMAS & LIBOWITZ, P.A
100 Light Street, Suite 1100
Baltimore, Maryland 21202
Telephone: (410) 752-2468
Facsimile: (410) 752-0979
flaws@tandllaw.com
aoconnell@tandllaw.com
sfried@tandllaw.com
athomas@tandllaw.com

*Counsel for Defendants Atlas Restaurant Group, LLC and Promenade Venture, LLC*